IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE PLUMBERS' LOCAL UNION NO. 93 U.A.; BOARD OF TRUSTEES OF THE PLUMBERS' LOCAL UNION NO. 93 U.A. RETIREMENT ACCOUNT FUND; BOARD OF TRUSTEES OF THE PLUMBERS' LOCAL UNION NO. 93 U.A. PENSION FUND; BOARD OF TRUSTEES OF THE PLUMBERS' LOCAL UNION NO. 93 U.A. HEALTH AND WELFARE FUND; BOARD OF TRUSTEES OF THE JOINT APPRENTICESHIP COMMITTEE FUND OF THE PLUMBING & HEATING INDUSTRY OF LAKE AND McHENRY COUNTIES; and THE INDUSTRY ADVANCEMENT FUND, <br><br>Plaintiffs, <br><br>vs. <br><br>BOSTON PLUMBING, INC; DANIEL BOSTON; and MICHAEL BOSTON, <br><br>Defendants. | Case No. 10 C 7856 |

**CORRECTED**
**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Board of Trustees of the Plumbers' Local Union No. 93 U.A. and several associated funds have sued Boston Plumbing, Inc. and its owners Daniel and Michael Boston. Plaintiffs claim that Boston Plumbing failed to make required contributions to the funds, deduct union dues, and submit reports, in breach of its obligations under several agreements between the parties and in violation of the Employee Retirement

1

Income Security Act (ERISA). They also claim that Daniel and Michael Boston were unjustly enriched by receiving benefits from the funds without making reciprocal contributions and that the Court should impose a constructive trust as a consequence. Plaintiffs have moved for summary judgment. For the reasons stated below, the Court grants the motion in part and denies it in part.

## Background

The Court draws the following facts from the parties' briefs and statements of uncontested facts. On a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and draw reasonable inferences in that party's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

Plaintiffs allege that in 1993, Boston Plumbing entered into a subscription agreement in which it agreed to be bound by the provisions of a collective bargaining agreement (CBA) with the Plumbers' Local Union No. 93 U.A. (the Union). The terms of the agreement establish various obligations for employers with respect to the Plumbers' Local Union No. 93 U.A. Retirement Account Fund, the Plumbers' Local Union No. 93 U.A. Pension Fund, the Plumbers' Local Union No. 93 U.A. Health & Welfare Fund (Welfare Fund), the Joint Apprenticeship Committee Fund of the Plumbing & Heating Industry of Lake & McHenry Counties, and the Industry Advancement Fund (the Trust Funds). The Trust Funds were themselves created by various trust agreements to which employers are also bound by the terms of the CBA.

Under the agreements, employers are required to make monthly contribution reports of hours worked by employees covered by the agreements and pay contributions to the Trust Funds at specified rates. Employers are also required to

deduct union dues from employees' paychecks, report the amounts deducted in the contribution reports, and submit the dues to the Union. The agreements provide that employers who fail to submit reports and contributions on time are liable for liquidated damages of ten percent of the unpaid amount, interest at the rate of one percent per month for each month that contributions remain unpaid, and reasonable costs and attorneys' fees. Plaintiffs allege that Boston Plumbing failed to submit a number of required payments, dues, and reports.

Plaintiffs also allege that in 1993, Boston Plumbing agreed to be bound by a document the parties refer to as the Working Contractor Agreement. Under this agreement, plaintiffs claim, Boston Plumbing agreed to pay monthly premiums to the Welfare Fund in exchange for health insurance coverage for Daniel and Michael Boston and their respective dependents. Boston Plumbing paid these premiums at the established rates between January 1994 and November 2006, and it also submitted corresponding reports. The Welfare Fund provided benefits to the Bostons during this time.

Plaintiffs claim that from October 2005 through March 2009, Boston Plumbing made every payment late and failed to submit any payment for eighteen monthly periods. Despite this, the fund continued to pay claims on behalf of the Bostons and their dependents.

**Discussion**

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir.

1999); Fed. R. Civ. P. 56(c). A court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But "[t]he nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**1.      Breach of contract claim – general contributions**

Plaintiffs invoke section 515 of ERISA, 29 U.S.C. § 1145, for the requirement that "employers . . . comply with the terms of their agreements to make contributions to funds such as these." *Central States, Southeast & Sw. Areas Pension Fund v. Transport, Inc.*, 183 F.3d 623, 627 (7th Cir. 1999). ERISA also provides that in the event of a judgment in favor of the plan under section 1445 for unpaid contributions,

> the court shall award the plan –
>    (A) the unpaid contributions,
>    (B) interest on the unpaid contributions,
>    (C) an amount equal to the greater of –
>       (I) interest on the unpaid contributions, or
>       (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g).

Plaintiffs allege that as of April 30, 2012, Boston Plumbing owed them $8,198.11 in contribution and $106.41 in union dues, for a total of $8,304.52. They also allege that Boston Plumbing failed to submit contribution reports or pay contributions for the months of November 2011 through March 2012, and they ask the Court, pursuant to section 1132(g), to require Boston Plumbing to "submit all missing Contribution Reports so the full amount of its liability to the Plaintiffs can be determined." Pls.' Mem. at 11.

Plaintiffs also cite section 17(e) of the CBA, which states that "[a]ny payments received after the fifteenth (15th) day of the succeeding month shall be assessed liquid damages." Pl. Ex. 7 at 26. The CBA also establishes that employers agree to be bound by declaration of trust documents that establish the funds. Plaintiffs cite a Declaration of Pension Trust, which provides that employers who fail to make contributions "in the correct amount and in a timely manner, shall be charged liquidated damages equal to ten (10%) percent of the unpaid or late contributions [and] may be charged interest thereon in an amount equal to one (1%) percent per month for each month during which such contributions remain unpaid." Pl. Ex. 8 at 8. "Awards of liquidated damages are mandatory in an action in which judgment in favor of the plan is awarded." *Central States, Southeast and Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989) (internal quotation marks and citation omitted).

Pursuant to these provisions, plaintiffs assert that Boston Plumbing owes $8.076.19 in liquidated damages and $2,257.88 in interest for the contribution periods of December 2010 through October 2011. Plaintiffs also assert that Boston Plumbing owes an additional amount for the periods from November 2011 through March 2012

5

but that they cannot determine the amount due because Boston Plumbing has not submitted contribution reports.  Finally, plaintiffs seek attorneys' fees for these periods.

Defendants do not specifically address any of these claims in their response.  Their brief is addressed in its entirety to disputing the existence of the Working Contractor Agreement on which plaintiffs base their Welfare Fund claims.  It contains no mention of contributions, union dues, or reports, and defendants nowhere claim that they made any of these submissions.

Defendants do take issue with various contentions that plaintiffs make in their Local Rule 56.1. statement of uncontested facts.  First, defendants appear to dispute that they are bound by the CBA.  They argue in their response to plaintiffs' Local Rule 56.1 statement that plaintiffs "have not provided any foundation" for plaintiffs' exhibit 6, a signature page reflecting Daniel Boston's agreement to be bound by the CBA.  They also claim that plaintiffs' assertion that defendants "agreed to be bound" is "not a fact, but rather a legal conclusion."  Defs.' Resp. to Pls.' L.R. 56.1 Stmt. ¶ 9.  Defendants nowhere state, however – in their brief, statement of uncontested facts, or response to plaintiffs' statement – that the signature page is false or that they otherwise did not agree to be bound by the CBA.  The Court concludes that they have forfeited any argument to that effect and are bound to the agreement's terms.

Defendants also take issue with the affidavit of Scott Spangle, on which plaintiffs base their claims regarding missed payments and calculations of amounts owed.  Spangle states that he "hold[s] the title of Collection Coordinator" for the Trust Funds.  Defendants argue that the affidavit lacks foundation and contains legal conclusions.  Although the Court agrees that Spangle's affidavit would not be enough to establish

defendants' particular obligations regarding interest and liquidated damages, plaintiffs in their briefs base these calculations on the terms of the CBA and pension agreement, not just Spangle's statement. Spangle also states in his affidavit that the initial amount due was calculated on the basis of a "payroll compliance audit conducted in January 2011 [that] revealed a contribution and Union dues deficiency in the amount of $14,376.34 during the period of January 1, 2008 through November 30, 2010." Spangle Aff. ¶ 4. Although the affidavit does not specifically cite to it, plaintiffs have submitted an "audit billing summary sheet" dated January 3, 2011 that reflects this amount. Pl. Ex. 10. Particularly in light of defendants' failure to provide any argument or evidence that contests these amounts, the Court concludes that this report provides a sufficient basis for Spangle's statement regarding the base amount due and that his responsibilities vis-a-vis the Trust Funds provide a sufficient foundation for the remainder of his statements.

Finally, although defendants' brief is directed entirely towards plaintiffs' claims regarding the Working Contractor Agreement, one of defendants' arguments could be considered to apply to these claims as well. The Court therefore addresses that argument here. Defendants argue that if the CBA is enforceable against them, its arbitration provision governs the present dispute. The CBA provides that "[d]isagreements or disputes and all interpretations of this Agreement shall be settled by arbitration. . . . In the event of a dispute or grievance arising between the parties hereto, such dispute or grievance shall be presented in writing to the Chairman of the Joint Arbitration Board." Pl. Ex. 7 at 11. Defendants maintain that if plaintiffs are

7

correct that the CBA is binding, their motion for summary judgment should be denied because they have not submitted the dispute to arbitration.

In response, plaintiffs cite a case in which the Supreme Court considered a claim that "as third-party beneficiaries of . . . collective-bargaining agreements, the trustees [of pension funds] are bound by the arbitration clauses provided therein to the same extent the Union would be if it were seeking judicial enforcement of those agreements." *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 370 (1984). The Court held that the general "presumption of arbitrability is not a proper rule of construction in determining whether arbitration between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements." *Id.* at 372. The Court then established that "courts must carefully examine the pertinent trust and collective bargaining agreements to determine whether the parties intended to arbitrate disputes between trust funds and employers." *Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Indus. Equip., Inc.*, 856 F.2d 837, 840 (7th Cir. 1998) (citing *Schneider Moving & Storage Co.*, 466 U.S. at 371-72).

The court in *Pipe Fitters' Welfare Fund* then considered the language of the trust fund agreements and the collective bargaining agreement and concluded that arbitration was not mandatory. In doing so, it relied on language very similar to the language in the present agreements. First, the court noted that the trust fund agreement provided that trustees "may take such steps, including the institution and prosecution of, or the intervention in, any proceeding at law or in equity or in bankruptcy

8

as may be necessary or desirable to effectuate the collection of such employer contributions." *Id.* at 840. The declaration of trust in this case states that the trustees may "prosecute, defend, and/or compromise or release claims or demands in favor of, or against, the Pension Fund on such terms and conditions as they deem advisable." Pl. Ex. 8 at 3. As in *Pipe Fitters' Welfare Fund*, Boston Plumbing agreed to be bound by the declaration of trust establishing the fund, and no term of the CBA states that it overrides the declaration. *Pipe Fitters' Welfare Fund*, 856 F.2d at 841; Pl. Ex. 7 at 28. And finally, both arbitration provisions stated that the arbitration board had jurisdiction over disputes "that might arise between *Employers and Employees*," rather than employers and funds. Pl. Ex. 7 at 11 (emphasis added); *Pipe Fitters' Welfare Fund*, 856 F.2d at 841. The Court thus concludes that arbitration was not a mandatory prerequisite to this suit and declines to deny the motion on this basis.

For these reasons, the Court grants plaintiffs' motion for summary judgment with regard to that portion of count one that seeks to hold defendants liable for failure to submit union dues, contributions, and reports. Because plaintiffs note that they have not yet reached a final calculation of the amount they are owed, and because that amount presumably has also changed since the filing of this motion, the Court enters summary judgment as to liability only and defers entry of judgment regarding the amount due.

**2.     Breach of contract claim – Health & Welfare Fund**

As the Court noted above, plaintiffs' remaining claims are based on Boston Plumbing's alleged failure to pay required monthly premiums to the Welfare Fund for

coverage that the fund provided to Daniel and Michael Boston and their dependents. Specifically, plaintiffs assert that Boston Plumbing failed to pay the required premium of $3,330 ($1,665 for each defendant) during eighteen monthly periods between December 2006 and March 2009, for a total of $59,440 in unpaid premiums. Plaintiffs also seek $7,276 in liquidated damages and $19,743.50 in interest for these periods, for a total of $86,459.50.

Again, defendants do not actually dispute that they failed to make the payments. Their primary contention in opposition to plaintiffs' motion is that plaintiffs have failed to establish a basis for their claim because it is based on the Working Contractor Agreement, allegedly signed in 1993, and plaintiffs have conceded that they cannot locate a signed copy of the agreement. Plaintiffs have provided only an unsigned copy.

The Labor-Management Relations Act "provides that employers may not make payments to employee benefit funds unless those contributions are specified in a written agreement." *Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 581 (7th Cir. 2010) (citing 29 U.S.C. § 186(c)(5)(B). Defendants do not dispute, however, that "a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement." *Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 767 (7th Cir. 2004).[1] "Assent can also be established through other evidence, including most importantly conduct manifesting agreement, such as . . . the payment of fringe

---

[1]Although *Bricklayers Local 21* and related cases concern collective bargaining agreements rather than related agreements such as the one at issue in this section, nothing in the reasoning of those cases indicates that this doctrine should not apply to the Working Contractor Agreement, and defendants do not argue that it does not.

10

benefit contributions [and] the existence of other agreements evidencing assent." *Line Constr.*, 591 F.3d at 580 (internal quotation marks and citation omitted). "[T]he existence of a 'written agreement,' albeit an unsigned one, detailing the terms upon which the fringe benefit contributions were to be made, and [employer's] payment of contributions in accordance with that agreement, effectively concludes our inquiry" regarding whether the employer is bound by the agreement. *Bricklayers Local 21*, 385 F.3d at 770.

Defendants maintain only that the lack of a signed document is essentially dispositive and that, even if it isn't, they made only "sporadic contributions" to the welfare fund, which is insufficient to establish a manifestation of agreement. Defs.' Resp. at 5. Defendants are incorrect. Although they failed to make contributions for the periods from April through August 2007, January through June 2008, and September 2008 through March 2009, they do not contest that – other than these periods – they made consistent (if sometimes late) contributions from January 1994 through November 2006. As evidence of these contributions, plaintiffs provide Spangle's affidavit, in which Spangle cites to (and provides) a ledger documenting all of these payments. Pls.' Exs. 9 ¶ 9 & 12. Plaintiffs have also provided "Monthly Remittance Reports," several of which are signed by Boston Plumbing's corporate secretary Maria Boston, indicating payment of the premium amounts for more than twenty months in 2005 through 2008. The reports include the following statement: "[T]he undersigned hereby expressly accepts and agrees to be bound by the Participants' Agreement and the trust agreements governing U.A. 93 Plumbers'

Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to the employer and non-bargained for employees in his employ." Pl. Ex. 13.

In light of this evidence and defendants' failure to provide any evidence to the contrary, the Court concludes that plaintiffs have established that defendants were bound by the Working Contractor Agreement. No reasonable fact finder could find otherwise.

Defendants raise three other arguments in opposition to plaintiffs' claim for breach of the Working Contractor Agreement. First, they argue that the agreement mandates arbitration. Because the agreement establishes that the "Employer adopts and agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust and Plan creating the Fund," Pl. Ex. 11 at 5, this argument is unavailing for the reasons discussed the previous section.

Second, defendants argue that plaintiffs are barred from recovery under the doctrine of laches, which can bar a plaintiff's action when it "appear[s] that a plaintiff's unreasonable delay in asserting his rights has prejudiced and misled the defendant, or caused him to pursue a course different from what he would have otherwise taken." *DeBruyn v. Elrod*, 84 Ill. 2d 128, 136, 418 N.E.2d 413, 417 (1981) (internal quotation marks and citation omitted). Defendants maintain that plaintiffs waited an "unreasonably lengthy amount of time before filing suit," thereby causing an increase in the balance and penalties due. Defs.' Resp. at 7. They submit the affidavit of Michael Boston, in which he states that because Boston Plumbing continued to receive insurance coverage through August 2008, he "understood that to mean that Boston Plumbing had not failed to make any contributions." Boston Aff. ¶ 5. He also asserts

12

that he based this belief on the fact that "Boston Plumbing was never given a chance to contest any findings regarding alleged unpaid contributions" and that he did not receive a notice of cancellation until March 2009.

Plaintiffs assert that regardless of the fact that "an inadvertent error" resulted in their continued payment of benefits despite missing premiums, Pls.' Mem. at 19, it was unreasonable for defendants to believe that they had paid on time. "That [defendant's] belief had to be reasonable is worth stressing, for certainly when laches is predicated on careless rather than deliberate conduct by the plaintiff . . . the defendant's fault is relevant." *Teamsters & Employees Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 883 (7th Cir. 2002). Plaintiffs argue that "a reasonable person could never believe that someone would just provide them health insurance coverage for free" and therefore defendants' "alleged reliance on the Plaintiffs' alleged silence is completely unreasonable." Pls.' Reply at 7. Moreover, the invoices that plaintiffs have provided in their Exhibit 13 reflect that Boston Plumbing was aware of its continuing obligation to pay. The Court agrees and concludes that the doctrine of laches does not bar plaintiffs' claims.

Third, defendants argue that plaintiffs failed to comply with several terms of the agreement. Defendants claim that plaintiffs continued to provide health insurance even though a "plan document" for the Welfare Fund establishes that coverage terminates when participants fail to make required contributions; failed to comply with a provision in the declaration of trust that requires them to provide "returns, reports, schedules, descriptions, and individual statements as are required by law with the times prescribed by law"; and failed to comply with a term of the CBA stating that if it is "discovered that

13

prior contributions or deductions have not been in accordance with the terms of the CBA, the employer will be advised of the discrepancy." Defs.' Resp. at 8-9.

Plaintiffs respond, correctly, that a "minor [contractual] breach is compensable in damages but will not generally . . . excuse the non-breaching party's duty of counterperformance." *Circle Sec. Agency, Inc. v. Ross*, 107 Ill. App. 3d 195, 202-03, 437 N.E.2d 667, 672 (1982). Defendants make no specific argument regarding how plaintiffs' failure to comply with these terms terminates their obligation to make payments, nor do they provide any legal support (or support from the contracts themselves) for their argument that the breach was more than minor. The Court declines to deny the motion on this basis.

For these reasons, the Court grants plaintiffs' motion for summary judgment on that portion of count one that seeks damages for breach of contract against Boston Plumbing. Because defendants have provided no indication that plaintiffs' calculations are incorrect, the Court finds that defendants are liable for $86,459.50 on this claim.

3. **Unjust enrichment**

In count two of their complaint, plaintiffs seek to hold Daniel and Michael Boston individually liable under a theory of unjust enrichment. Plaintiffs argue that because the Bostons retained the benefits that were paid to them in the absence of required contributions by Boston Plumbing, they "unjustly retained a benefit to the plaintiff's detriment and . . . the defendant[s'] retention of the benefit violates the fundamental principles of justice, equity and good conscience." *Martis v. Pekin Mem. Hosp. Inc.*, 395 Ill. App. 3d 943, 952, 917 N.E.2d 598, 606 (2009).

14

Defendants argue that the Bostons cannot be liable because of an Illinois Appellate Court decision stating that "[u]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (2009). "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Id.* (internal quotation marks and citations omitted). The Seventh Circuit, however, has noted that "it appears that the Illinois Supreme Court recognizes unjust enrichment as an independent cause of action" and that "*Martis*'s articulation of unjust enrichment law might be viewed as language limited to its particular facts." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516-18 (7th Cir. 2011). This Court is required to follow the Seventh Circuit's construction of Illinois law absent an intervening and contrary decision by the Illinois Supreme Court. *See Reiser v. Residential Funding Corp.*, 380 F.2d 1027, 1029 (7th Cir. 2004). It is therefore inappropriate to dismiss count two on the basis argued by defendants

The Court declines at this point, however, to grant plaintiffs summary judgment on this claim. Other than their basic argument that the Bostons received benefits for which Boston Plumbing did not pay, plaintiffs provide no argument regarding why this situation "violates the fundamental principles of justice, equity and good conscience" in a way that might make the Bostons individually liable. *See id.* at 516 (internal quotation marks and citation omitted). Moreover, because the Court has granted plaintiffs' motion for summary judgment on count one, it is at least possible that the Welfare Fund will

15

receive, albeit in delayed fashion, the contributions it is owed in exchange for the benefits it disbursed. The Court therefore concludes that plaintiffs have not established the absence of any genuine issue of material fact on this point and denies plaintiffs' motion for summary judgment on count two.

**4.     Constructive trust**

In count three of their complaint, plaintiffs ask the Court to impose a constructive trust over the assets of Daniel and Michael Boston. Although the Court would not grant summary judgment on this claim in any event, given the denial of plaintiffs' request for summary judgment on count two, the Court also notes that this claim does not appear to be legally viable. The Seventh Circuit has noted that plaintiffs seeking to impose constructive trusts in this context must identify "particular funds that, in good conscience, belong to petitioners" rather alleging that they are "contractually entitled to some funds for benefits that they conferred." *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Varco*, 338 F.3d 680, 688 (7th Cir. 2003) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002)). Plaintiffs contend that they have "named a particular fund . . . – all monies that should have been properly paid to the Welfare Fund to pay for the health insurance coverage but rather were paid to Michael and/or Daniel Boston." Pls.' Reply at 11. Based on this contention, however, it appears clear that the plaintiffs are making a contractual claim over "funds for benefits that they conferred" and are therefore not entitled to a constructive trust under *Varco.*

For these reasons, the Court denies plaintiffs' motion for summary judgment on count three.

**Conclusion**

For the reasons stated above, the Court grants plaintiffs' motion for summary judgment on count one of its complaint [docket no. 58] and denies the motion with respect to counts two and three. The case is set for a status hearing on September 4, 2012 at 9:30 a.m. to set a trial date on the remaining claims and issues and discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 27, 2012
(as corrected August 28, 2012)